ARTHUR A. MITCHELL & others *vs*. METROPOLITAN
DISTRICT COMMISSION.[1]

Suffolk.    May 14, 1976. — July 23, 1976.

Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Metropolitan District Commission.   Practice, Civil,* Declaratory relief, Amendment.   *Words,* "Employment in Suffolk County only."

An action by members of the police force of the Metropolitan District Commission seeking an award of pay allegedly due them for overtime work could not be maintained against the commission; the only means provided for such a recovery was a petition brought directly against the Commonwealth under G. L. c. 258, § 1 [486-489]; nor could an action for declaratory relief be maintained where the stat-

---

[1] The joining of additional parties defendant as members of the Metropolitan District Commission was surplusage. We therefore treat the bill as having been brought against the commission alone. See *Ciszewski* v. *Industrial Acc. Bd.* 367 Mass. 135, 139 (1975).

ute used in computing overtime, which was the subject of the challenge, was no longer in effect and had no bearing on overtime services being rendered or to be rendered in the future [489].

Where the plaintiffs in an action against the Metropolitan District Commission could have moved to amend the suit to an action against the Commonwealth at any time during the seven years which elapsed between the filing of their bill and the date judgment was entered dismissing their action and where further prolongation of the litigation would be manifestly unjust to the Commonwealth, this court did not exercise its power to remand the action with leave to make such an amendment. [489-490]

Employees of the Metropolitan District Commission whose work was not performed in Suffolk County were not entitled to time off or additional pay for work on holidays applicable only to Suffolk County under G. L. c. 30, § 24A. [490-492]

BILL IN EQUITY filed in the Superior Court on March 12, 1968.

The suit was heard by *Kalus*, J.

The case was submitted on briefs.

*John P. White, Jr.*, for the plaintiffs.

*Francis X. Bellotti*, Attorney General, & *Michael Eby*, Assistant Attorney General, for the defendant.

KEVILLE, J. This bill in equity was brought by nineteen members of the police force of the Metropolitan District Commission (M.D.C.) on March 12, 1968, for the purpose of challenging certain practices of the M.D.C. concerning the compensation and time off to which the plaintiffs claimed to be entitled. The principal practice under attack in the bill as originally filed was one governing time off or, in lieu thereof, compensation for work performed on the two legal holidays observed only in Suffolk County (see G. L. c. 4, § 7, Eighteenth), with respect to which the plaintiffs prayed for a declaration of their rights and for an order that the M.D.C. give them the additional time off or the pay claimed by and denied to them since the inception of the practice.[2] The bill was subsequently amended

---

[2] The original bill also contained indefinite allegations, accompanied by similar prayers, which the parties and the trial judge interpreted as raising a further issue with respect to the computation of the plaintiffs' vacation time. While it is questionable whether such an issue was properly before the Superior Court (see *Massachusetts Gen. Hosp.* v.

on the plaintiffs' motion to raise a further issue, the legality of the method by which the M.D.C. had been computing the plaintiffs' overtime compensation.[3] A second motion added as parties plaintiff "all of the police officers and other employees [of the M.D.C.] who might be affected by a disposition of this case ... not presently named as parties." The case was submitted to the trial judge on a statement of agreed facts constituting a case stated, and the judge on July 20, 1972, entered findings, rulings and order for decree, wherein he upheld all the challenged actions of the M.D.C. On March 19, 1975, a judgment to that effect, from which the plaintiffs have appealed, was entered pursuant to Mass.R.Civ.P. 58 (a), 365 Mass. 826 (1974).[4]

1. The controversy about the computation of overtime pay arose from G. L. c. 92, § 62B (inserted by St. 1951, c. 612): "Notwithstanding any other provision of law, members of the police force of the [M.D.C.] ... who perform service beyond their regular hours of service shall be compensated therefor as overtime service." The M.D.C., apparently in reliance on G. L. c. 92, § 62 (as appearing in St. 1950, c. 730),[5] concluded that its police officers were

_Department of Pub. Welfare,_ 1 Mass. App. Ct. 363, 367 [1973]), the disposition by the court of the vacation-time issue has not been argued by the plaintiffs on appeal. We therefore do not consider the propriety of that disposition. Mass.R.A.P. 16(a) (4), as amended, 367 Mass. 921 (1975).

[3] The plaintiffs did not pray for declaratory relief on that issue, but only for an order that the M.D.C. "pay to your plaintiffs all amounts which may have accrued and be due and owing to them as overtime." The judgment, however, contains a declaration as to the plaintiffs' overtime rights.

[4] The record does not disclose any reason for the lag of seven years from the commencement of suit to the entry of judgment.

[5] Section 62, as so appearing, provided: "Members of the police force of the commission shall be excused from duty without loss of pay for two consecutive days in each period of seven days," subject to certain exceptions not here material. The M.D.C. evidently concluded from this language that its police officers were on "duty" seven days a week, though "excused" therefrom for two days in each seven-day period. Police officers of the M.D.C. have been exempted from G. L. c. 149, § 30A, which regulates the work week of most State employees, since the insertion of § 30A in the General Laws by St. 1947, c. 677, § 1.

technically "on duty" seven eight-hour days (or fifty-six hours) a week, and calculated their hourly overtime rate by dividing their weekly salary by fifty-six.[6] The plaintiffs contend that the formula used by the M.D.C. was improper in that it should have been based on a forty-hour work week. The M.D.C. paid its police officers in accordance with that formula from 1951, when G. L. c. 92, § 62B, took effect, until late in 1969, when § 62B was amended to require that their overtime compensation be paid "at an hourly rate equal to one and one half times the hourly rate of their regular compensation for their average weekly hours of regular duty" (St. 1969, c. 872, § 3). While the plaintiffs do not question the method of computing overtime compensation after the effective date of the 1969 amendment, those plaintiffs who are police officers seek recovery of all amounts due under the formula asserted by them, less the amounts paid them under the M.D.C. formula, for the entire eighteen-year period during which the latter formula was in effect.

The resolution of the overtime issue is obviously not a simple one. However, we do not decide that issue since we are of the opinion that the plaintiffs are not entitled to the relief they seek regardless of the propriety of the interpretations of the M.D.C.

On the face of the bill the only relief sought on the overtime claim is an order that the M.D.C. pay the police officers the amounts allegedly due them (see n. 3), that is, a money judgment against the M.D.C. The difficulty with the entry of such a judgment lies in the fact that the M.D.C., unlike a public authority or political subdivision of the Commonwealth (compare *Ward* v. *Comptroller of the Commonwealth*, 345 Mass. 183, 186-187 [1962]), was established as a department of the government of the Commonwealth itself (see St. 1919, c. 350, §§ 1, 123-129)

---

[6] Police officers of the M.D.C. have also been exempted from the provision of G. L. c. 149, § 30B, by which overtime compensation is required to be paid to most State employees at the rate of one and one-half times their regular hourly rates, since the enactment of that provision by St. 1960, c. 762.

and has at all times remained subject to the laws regulating the administration of Commonwealth agencies (see G. L. c. 29, § 1; G. L. c. 30, § 1). As such, the M.D.C. conducts its activities and meets its payrolls, including overtime payments, not with funds of its own but with Commonwealth funds made available to it from the State treasury by periodic appropriations.[7] See, e.g., G. L. c. 29, §§ 9A, 12, 13, 14, 26, 27. The power of the M.D.C. to use the funds so appropriated is rigorously limited by fiscal constraints imposed by other officers and agencies of the Commonwealth (see, e.g., G. L. c. 7, § 13; G. L. c. 29, §§ 9B, 18, 29), and does not include even the power to write checks upon the State treasury. By the same token the members of the police force of the M.D.C., though appointed by the Commissioner of that agency and subject to his supervision (G. L. c. 28, § 3; *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv.* 348 Mass. 184, 187 [1964]), are more accurately characterized as employees of the Commonwealth. See, e.g., G. L. c. 30, §§ 45-50, 53, 57; G. L. c. 149, §§ 30A-30C. Like other Commonwealth employees, they work for and are paid by the Commonwealth.

Thus, if there is liability for the overtime payments claimed, that liability rests on the Commonwealth. While the M.D.C. is authorized by statute fully to represent the interests of the Commonwealth in a certain class of tort actions arising upon land under M.D.C. control (G. L. c. 92, § 36; see *Longo* v. *Metropolitan Dist. Commn.* 348 Mass. 174 [1964]), there is no comparable statute for cases involving the type of recovery claimed in this proceeding. Rather, the only means provided by the Legislature for this type of recovery is a petition brought directly against the Commonwealth under G. L. c. 258, § 1. See *O'Connor* v. *Deputy Commr. & Comptroller of the Commonwealth,*

---

[7] While the M.D.C. differs from many State agencies in that various of its activities are ultimately financed by assessments upon the cities and towns served by it and by revenues generated from the use of lands under M.D.C. control, the sums so realized, like other Commonwealth funds, are required to be paid into the State treasury. See, e.g., G. L. c. 29, §§ 47A, 51; G. L. c. 92, §§ 5-8, 26, 48, 57, 58, 60.

348 Mass. 569-570 (1965). Compare *Kirkpatrick* v. *Commonwealth,* 362 Mass. 154 (1972). No such recovery can be granted here since this is not a petition against the Commonwealth under that statute. See *Long Island Painting Corp.* v. *Beacon Constr. Co. Inc.* 345 Mass. 567, 571 (1963). Therefore we conclude that the plaintiffs have misconceived their remedy.

Nor can the plaintiffs fare better on the theory that a prayer for declaratory relief on the overtime issue was implicit in their amended bill (see n. 3). The formula used in computing overtime compensation, which is the subject of this challenge by the plaintiffs, has not been in effect since 1969, and therefore has no bearing on overtime services currently being rendered or to be rendered hereafter. Contrast *Massachusetts Gen. Hosp.* v. *Rate Setting Commn.* 359 Mass. 157, 167-168 (1971). On the contrary, we are being called upon to deal solely with claims which have long since matured, based upon actions taken by the M.D.C. in years gone by. The correctness of the formula employed by the M.D.C. prior to 1969 is of no materiality except as it bears on the legal liability of the Commonwealth, if any, for the sums claimed, which, as already noted, might otherwise have been established in a proceeding under G. L. c. 258, § 1. Compare *O'Connor* v. *Deputy Commr. & Comptroller of the Commonwealth,* 348 Mass. at 570. The assertion of a monetary claim in the form of a declaratory proceeding does not assist the plaintiffs' cause for the Commonwealth has not consented to be made a party to such a proceeding. *Ward* v. *Comptroller of the Commonwealth,* 345 Mass. at 185-186. See *Executive Air Serv. Inc.* v. *Division of Fisheries & Game,* 342 Mass. 356, 358 (1961). Compare *Kilroy* v. *O'Connor,* 324 Mass. 238, 241-243 (1949). Contrast *Long Island Painting Corp.* v. *Beacon Constr. Co. Inc.* 345 Mass. at 571; *Millis* v. *Massachusetts Bay Transp. Authy.* 367 Mass. 831, 833-834 (1975).

There remains the question of our disposition of this branch of the case. It is within our power to order it remanded with leave to amend the bill to an action against

the Commonwealth for the sums claimed under G. L. c. 258, § 1 (as appearing in St. 1973, c. 1114, § 337). See *Haverhill Manor, Inc.* v. *Commissioner of Pub. Welfare*, 367 Mass. 15, 32, cert. den. 423 U. S. 929 (1975). However, we are not disposed to exercise that power here. The plaintiffs could have moved for such an amendment in the Superior Court at any time during the six years which elapsed between the filing of their bill and July 1, 1974, under G. L. c. 231, §§ 51, 55 (as then in effect), and at any time between the latter date and March 19, 1975, when judgment was entered, under Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974). No such motion was ever filed, although the plaintiffs were permitted to amend their bill in other respects on two occasions and there appears to be no reason to believe that a timely motion to convert the case into a c. 258 proceeding would have been denied. We think that the seven years during which the plaintiffs had the opportunity to preserve their rights were ample. Further prolongation of the litigation, in our view, would be manifestly unjust to the Commonwealth. Any such amendment would relate back to the date on which the bill was originally brought (Mass.R.Civ.P. 15[c]) and would frustrate the purpose of the three-year statute of limitations by which actions against the Commonwealth are governed (G. L. c. 260, § 3A, inserted by St. 1943, c. 566, § 1). It follows that so much of the bill as relates to overtime compensation must be dismissed.

2. However, the question of the plaintiffs' entitlement to holiday pay (or alternatively to compensatory time off in the case of present employees), unlike the overtime issue, arose from an M.D.C. practice which (so far as we can determine) is still in effect. We therefore consider the declaration sought by the plaintiffs on that issue. See *Haverhill Manor, Inc.* v. *Commissioner of Public Welfare*, 367 Mass. at 30.

The term "legal holiday" is defined in G. L. c. 4, § 7, Eighteenth, the first sentence of which fixes the dates on which various holidays are to be observed throughout the Commonwealth. The second sentence (as appearing in

St. 1962, c. 616, § 1) has at all material times provided that "with respect to Suffolk county only, March seventeenth and June seventeenth, or the day following when said days occur on Sunday," shall also be legal holidays. The first paragraph of G. L. c. 30, § 24A (as appearing in St. 1964, c. 423) requires that Commonwealth employees ordered to work on a legal holiday listed in the first sentence of clause Eighteenth be given compensatory time off or additional pay, but makes no provision for employees who work on the Suffolk County holidays referred to in the second sentence of clause Eighteenth. That omission was cured when the Director of Personnel and Standardization of the Commonwealth adopted a regulation (Regulation OE-4) by which similar provision was made for work performed on either of the latter holidays "with respect to employment in Suffolk County only." The plaintiffs do not challenge that regulation but only its interpretation by the M.D.C.

While the headquarters of the M.D.C. is located in Suffolk County, it operates facilities and its employees perform services in certain other counties as well. The question is what constitutes "employment in Suffolk County only" of those employees for purposes of Regulation OE-4. On March 13, 1968, the Commissioner of the M.D.C. answered that question by issuing a directive to the following effect: "The location of labor or police district headquarters as to counties will not be the distinguishing factor — it will be solely *where the work performance occurs*" (emphasis his). Pursuant to that directive, M.D.C. employees required to work on one of the Suffolk County holidays have been afforded the benefits of Regulation OE-4 only if their work is performed in Suffolk County. The plaintiffs maintain that the Commissioner's interpretation of the regulation was erroneous in that it discriminates arbitrarily, on the basis of geography, among employees performing identical services. They contend that the location of the M.D.C. headquarters in Suffolk County should be the decisive factor, and that all M.D.C. employees working on one of the Suffolk County holidays should

be treated as being engaged in "employment in Suffolk County," regardless of where they are assigned.

There is no merit in the contention. It seems to us that a natural reading of the phrase "employment in" clearly permits (and may require) the conclusion that it is directed to the location at which the employee performs the work rather than the location of the offices of his ultimate superiors. By analogy, one would hardly have described the positions held by personnel at the Watertown Arsenal as "employment in" Washington, D.C. And if there is anything arbitrary or unfair in thus discriminating among employees of the M.D.C., it cannot rightly be laid at the door of the M.D.C., but is an outgrowth (perhaps an inevitable one) of the second sentence of G. L. c. 4, § 7, Eighteenth, and the regulation adopted by the Director of Personnel and Standardization pursuant to clause Eighteenth. So much of the judgment as upheld the M.D.C. practice regarding the Suffolk County holidays was correct.

The judgment is to be modified by striking that portion in which the rights of the parties with respect to overtime compensation are declared, and by substituting therefor an order that so much of the bill as seeks relief on the matter of overtime compensation be dismissed. As so modified the judgment is affirmed.

*So ordered.*