LABOR RELATIONS COMMISSION & another[1] *vs.* CITY OF EVERETT & another.[2]

Middlesex.    February 13, 1979. — June 28, 1979.

Present: HALE, C.J., ROSE, & PERRETTA, JJ.

*Labor Relations Commission. State Administrative Procedure Act. Labor. Municipal Corporations,* Officers and employees.

In an action under G. L. c. 150E, § 11, by the Labor Relations Commission to enforce an order that a city cease and desist from prohibited practices, the city was foreclosed from arguing that the commission's order was not supported by substantial evidence where it failed to file an appeal under c. 30A, § 14, from either the commission's original or supplemental decisions. [827-829]

Upon a finding by the Labor Relations Commission that a unilateral change instituted by a city in the hours during which firefighters

---

[1] Leo Jamison, president of Local 1656, International Association of Firefighters, AFL-CIO, who intervened as representative of all the members of Local 1656.

[2] The mayor of Everett.

were required to perform floor patrol constituted an unfair labor practice under G. L. c. 150E, § 10(*a*)(5), the commission had the power under c. 150E, § 11, to order the city to make whole those employees who were required to perform additional duties while the city's order was in effect. [829-831]

CIVIL ACTION commenced in the Superior Court on February 7, 1977.

The case was heard by *Travers*, J.

*M. Robert Dushman* for the city of Everett & another.

*David F. Grunebaum* for the Labor Relations Commission.

*James O. Hall*, for the intervener, submitted a brief.

ROSE, J. The Labor Relations Commission (commission), in a decision dated May 5, 1976, found that the city of Everett (city) through its mayor had failed to bargain in good faith with representatives of Local 1656, International Association of Firefighters, AFL-CIO, the city's firefighters' union, by unilaterally altering the firefighters' night patrol duties. By this action pursuant to G. L. c. 150E, § 11, the commission seeks to enforce its order, set forth in a supplemental decision dated October 25, 1976, that the city cease and desist from prohibited practices and pay each affected firefighter ten percent of his regular hourly wage for each hour spent on night floor patrol performing desk duty. The Superior Court granted judgment for the commission on the pleadings, and we affirm.

The city's contention that the commission's order was not supported by substantial evidence is foreclosed by the city's failure to file an appeal under G. L. c. 30A, § 14, from either the commission's original or supplemental decisions. Under § 11 of G. L. c. 150E ("Labor Relations: Public Employees"), as amended by St. 1974, c. 589, § 3, the commission is authorized to "institute appropriate proceedings in the superior court . . . for enforcement of its order . . . ." There is no provision in c. 150E, § 11, for review of the commission's orders by an aggrieved party. The city argues that an enforcement proceeding under

c. 150E, § 11, should be conducted in a manner similar to the procedures outlined in G. L. c. 150A, § 6(e), governing enforcement proceedings by the commission in cases involving private sector employees. Chapter 150A, § 6(e), as amended through St. 1974, c. 725, § 3, provides that in an action by the commission for enforcement of its order, the order "shall be reviewed in accordance with the standards for review provided in" G. L. c. 30A, § 14(7), the State Administrative Procedure Act. See *Labor Relations Commn.* v. *University Hosp., Inc.,* 359 Mass. 516, 520 & n.3 (1971). Thus, the city argues that it should be entitled to a scope of judicial review comparable to that provided for by G. L. c. 30A, § 14(7), even though it filed no appeal. We do not agree. The absence of any provision in G. L. c. 150E, § 11, for review of the commission's decisions leads to the conclusion that the Legislature intended judicial review of orders of the commission in cases involving public employees to proceed by way of appeal under the State Administrative Procedure Act[3] and not under c. 150E, § 11. "Where no statutory form of judicial review or appeal is provided, judicial review shall be obtained by means of a civil action" commenced within thirty days after receipt of notice of the final decision of the agency. G. L. c. 30A, § 14, as amended by St. 1976, c. 411. Since the city failed to file a complaint seeking judicial review of the commission's final decision and order within the thirty-day limit required by c. 30A, § 14,[4] the only issue

[3] We note that G. L. c. 149, §§ 178F and 178L (both repealed by St. 1973, c. 1078, § 1), the predecessor statutes to G. L. c. 150E, § 11, contained no provision for review by a party aggrieved by an order of the commission. Review in such cases was permitted under G. L. c. 30A, § 14. See, e.g., *School Comm. of Stoughton* v. *Labor Relations Commn.,* 4 Mass. App. Ct. 262, 265-266 (1976) (after further appellate review was allowed by the Supreme Judicial Court, 370 Mass. 867 [1976], the appeal was voluntarily dismissed by agreement of the parties). Compare G. L. c. 150A, § 6(f), which provides for review of an order of the commission by an aggrieved party who files an appeal within thirty days after receipt of notice of the order.

[4] The city did not at any time prior to the commencement of the commission's action for enforcement file an appeal. The commission

before the Superior Court was whether the commission's decision was within its jurisdiction. See *Department of Pub. Welfare* v. *Billerica,* 350 Mass. 56, 57 (1966); *Commissioner of Pub. Health* v. *Board of Health of Tewksbury,* 350 Mass. 507, 508-509 (1966); *Director of Div. of Water Pollution Control* v. *Uxbridge,* 361 Mass. 589, 592-593 (1972). We conclude that it was.

Under G. L. c. 150E, § 11, the commission, once it determines that a prohibited practice under c. 150E, § 10, has been committed, is authorized to issue a cease and desist order to the offending party "and shall take such further affirmative action as will comply with the provisions of this section . . . ." We construe the language "further affirmative action"[5] as contemplating remedial measures to be determined by the commission including, but not limited to, those specified in the statute, such as reinstatement with or without back pay of an employee discharged or discriminated against in violation of c. 150E, § 10.[6] Analogous language in the Federal Labor Management Relations Act, 29 U.S.C. § 160(c) (1976), has been construed by Federal courts as endowing the National Labor Relations Board with broad remedial powers to

---

filed its complaint on February 7, 1977, 105 days after issuance of its supplemental decision and order and 278 days after issuance of its original decision and order.

[5] In *Labor Relations Commn.* v. *Selectmen of Dracut,* 374 Mass. 619, 624 (1978), the court construed similar language in G. L. c. 149, § 178L, in which no provision for judicial enforcement of commission orders was made, to mean resort to the equitable powers of the Supreme Judicial Court and the Superior Court. Since G. L. c. 150E, § 11, was amended by St. 1974, c. 589, § 3, to include an express provision for judicial enforcement of the commission's orders, we think the phrase "further affirmative action" provides relief broader in scope than that permitted through equitable powers.

[6] This court has held, in a case arising under c. 149, § 178L, that the term "reinstatement" is to be construed broadly. "[O]ne may be 'reinstated' to a former status and awarded back pay even though he has not been discharged." *School Comm. of Stoughton* v. *Labor Relations Commn., supra* at 270.

devise remedies to effectuate the policies of the Act. *NLRB* v. *Seven-Up Bottling Co.*, 344 U.S. 344, 346 (1953). *Fibreboard Paper Prod. Corp.* v. *NLRB*, 379 U.S. 203, 215-216 (1964). The Board's authorization under 29 U.S.C. § 160(c) "to take ... affirmative action" has been construed "to include the conduct of proceedings to determine the amount of back pay following court enforcement of a Board order directing payment of back pay in general terms." *NLRB* v. *Nickey Chevrolet Sales, Inc.*, 493 F.2d 103, 105 (7th Cir.), cert. denied, 419 U.S. 834 (1974).[7] It is well established that the reference to reinstatement with back pay in 29 U.S.C. § 160(c) is only illustrative of affirmative action and does not exhaust the possibilities. See *Phelps Dodge Corp.* v. *NLRB*, 313 U.S. 177, 188, 194 (1941), and Note, 84 Harv. L. Rev. 1670, 1684 (1971).

Since the unilateral change instituted by the employer in the hours during which firefighters were required to perform floor patrol was found by the commission to constitute a refusal to bargain collectively in good faith and hence an unfair labor practice under c. 150E, § 10(a)(5), the commission had the power under c. 150E, § 11, to order the employer to make whole those employees who were required to perform additional duties while the mayor's order was in effect. As the Federal courts have held, any employer guilty of a refusal to bargain by unilaterally changing working conditions may be ordered to make the affected employees whole for the losses caused by the unilateral changes. *NLRB* v. *Frontier Homes Corp.*, 371 F.2d 974, 981 (8th Cir. 1967). *Overnite Transp. Co.* v. *NLRB*, 372 F.2d 765, 770 (4th Cir.), cert. denied, 389

---

[7] While it is the ordinary practice of the NLRB not to consider the amount of back pay until its general remedial order has been enforced by the court on its merits, *NLRB* v. *Nickey Chevrolet Sales, Inc., supra* at 106), we see no reason for this court to refrain from treating the original and supplemental orders of the commission in one proceeding. The city raises no argument concerning the amount of the monetary award ordered by the commission to be made to the employees, challenging only the commission's authority to make the award.

U.S. 838 (1967). It does not appear that the commission here has compelled the employer to agree to any substantive contractual provision of a collective bargaining agreement (contrast *H.K. Porter Co.* v. *NLRB,* 397 U.S. 99, 106-108 [1970]); it is merely attempting, in compliance with the provisions of c. 150E, § 11, to restore the situation as nearly as possible to that which would have existed but for the unfair labor practice. *J.H. Rutter-Rex Mfg. Co.* v. *NLRB,* 399 F.2d 356, 361 (5th Cir. 1968), reversed on other grounds, 396 U.S. 258 (1969). The judgment of the Superior Court enforcing the commission's order directing the city to cease and desist and to make payment due to the firefighters for hours worked on night floor patrol is affirmed.

*So ordered.*