METROPOLITAN DISTRICT COMMISSION *vs.* CITY OF CAMBRIDGE. August 10, 1981. By this action in the nature of mandamus (see *Urban Transport, Inc.* v. *Mayor of Boston,* 373 Mass. 693 [1977]), the Metropolitan District Commission (MDC) sought an order to compel the city of Cambridge (city) to reimburse it in accordance with the provisions of St. 1958, c. 443. A judge of the Superior Court found for the MDC and ordered judgment to be entered compelling payment in the amount of $140,254.65.

According to the terms of St. 1958, c. 443, whose effective date was July 1, 1958, the city transferred to the MDC the control and maintenance of the First and Third street drawbridges. (The Third Street drawbridge no longer exists.) The question on appeal concerns the city's obligation under that statute to "reimburse the Commission [MDC] for one-third of the cost of the salaries of the positions of the employees engaged in the operation of said drawbridges on and after the effective date of this act."

While not contesting its financial obligation to the MDC for payment of a third of the salaries of the drawbridge employees, the city does dispute the procedure by which the MDC is to be paid. This is the primary issue in dispute. The city maintains that the term "reimburse[ment]" as specified in c. 443 constitutes "charges or assessments" within the meaning of G. L. c. 59, § 20, as appearing in St. 1977, c. 888. Basing its argument on the requirements of § 20, the city asserts that the MDC's failure to adhere to the precepts of that provision renders the city unable to make the payment due the MDC.

The MDC asserts (correctly) that G. L. c. 59, § 20, does not apply because the city's obligation to "reimburse" the MDC constitutes an account payable. Particular weight is placed on the fact that the MDC invoices over an eleven-year period, 1958-1969, had been fully paid by the city. Invoices for the years 1971 and 1972 were also paid.

1. We address the city's primary claim that its statutory obligation under St. 1958, c. 443, to reimburse the MDC can only be discharged pursuant to the procedures set forth in G. L. c. 59, § 20. The city begins its argument by characterizing its obligation to "reimburse" the MDC as a charge or assessment and, in so doing, it seeks to bring the terms and conditions on which such a payment is to be made under the statutory scheme of G. L. c. 59, §§ 20, 21. In support of its argument the city cites *Kingman, petitioner,* 153 Mass. 566 (1891), and the legislative history of G. L. c. 59, § 20. This entire argument is beside the point.

*Kingman* pertained to an assessment on cities and towns by the Commonwealth for the operation of a sewerage system. There, the court defined assessment as the "method . . . of apportioning the cost of local improvements by delegated authority." *Id.* at 577. In no sense can this process be rendered comparable to the reimbursement here in issue.

The assessment described in *Kingman* was to be apportioned on "just" and "equitable" grounds "in the distribution and apportionment of this public burden." *Id.* at 579. This is in sharp contrast with the imperatives of a specific statutory provision — St. 1958, c. 443 — requiring the city of Cambridge to make a one-third payment of salaries of employees, whose sole responsibility is the operation of a drawbridge in that city, a task not in the nature of a public improvement for the benefit of numerous communities but merely for the benefit of one city.

2. The second branch of the city's argument consists of an attempt to immerse its logic in legislative history dating back to 1785. Unfortunately, this provides no aid either. "[T]he general rule of statutory construction is that a statute that is not ambiguous cannot be interpreted by resort to proceedings incident to its passage." *Chouinard, petitioner,* 358 Mass. 780, 782 (1971), and case cited. See *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977).

We do not perceive any ambiguity or lack of clarity in the language of c. 443 generally, or in regard to understanding the word "reimburse," specifically. Compare *Rosenbloom* v. *Kokofsky,* 373 Mass. 778, 781 (1977). "Where the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." *Gurley* v. *Commonwealth,* 363 Mass. 595, 598 (1973). See also *Burke* v. *Chief of Police of Newton,* 374 Mass. 450, 452 (1978). Moreover, the city's continuous and uninterrupted payment of the MDC invoices for eleven years is indicative of the longstanding practical construction placed on this provision by the parties.

3. The city's argument bottomed on G. L. c. 40, § 5, is similarly beside the point. See *Anderson* v. *Boston,* 376 Mass. 178, 183 (1978), appeal dismissed, 9 U.S. 1060 (1979). See also in this regard, G. L. c. 44, § 2.

4. The city also asserts that relief in the nature of mandamus against a municipal corporation is not appropriate in these circumstances. This

claim is patently wrong. The case of *Department of Public Welfare* v. *Billerica,* 350 Mass. 56, 58 (1966), is dispositive of this issue.

The statute plainly says that the city shall reimburse the MDC. The relief granted by the judge was thus fully warranted. Her order prevents a failure of justice and provides the MDC with relief in circumstances where other adequate and effectual remedies are lacking. See *Cullen* v. *Building Inspector of No. Attleborough,* 353 Mass. 671, 678 (1968). Contrast *Coach & Six Restaurant, Inc.* v. *Public Works Commn.,* 363 Mass. 643, 644-645 (1973).

5. None of the other issues raised in the trial court has been argued on appeal; thus, no discussion of any of them is necessary. See Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975).

6. In conclusion, we agree with the trial judge that the provisions of St. 1958, c. 443, are clear and unambiguous. As the statute imposes a mandatory obligation upon the city to pay the one-third reimbursements (contrast *Urban Transport, Inc.* v. *Mayor of Boston, supra* at 698), relief in the nature of mandamus was proper.

Although mandamus lies directly against the city, we think the city treasurer should be joined as a party defendant to avoid delay in actual payment. Accordingly, the case is remanded to the Superior Court to permit such action. See and compare *Perkins Sch. for the Blind* v. *Rate Setting Commn.,* 383 Mass. 825, 829-830 (1981), and authorities cited. If, within thirty days after the date of the rescript the MDC should file a motion to amend the complaint to name the city treasurer as an additional party defendant, the motion is to be allowed and a judgment entered against the city treasurer as well as the city in the same amount as that previously determined by the Superior Court judge.

*So ordered.*

*Michael C. Costello,* Assistant City Solicitor (*Birge Albright* with him) for the defendant.

*David J. Hopwood,* Assistant Attorney General, for the plaintiff.